UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -vs- | : | Civ. No. 3:05cr142 (PCD) |
| | : | |
| Edward KIENER | : | |
| | : | |

**RULING ON DEFENDANT'S MOTION FOR CHANGE OF VENUE AND MOTION TO DISMISS**

Defendant Edward Kiener moves [Doc. No. 15] the Court for an order changing venue to the United States District Court for the Central District of California. Defendant also moves [Doc. No. 21-1] to dismiss the charges brought against him in the Government's indictment. For the reasons that follow, Defendant's motions [Doc. Nos. 15, 21-1] are **denied**.

**I.   Background**

On June 1, 2005, the Grand Jury sitting in the United States District Court for the District of Connecticut returned a one count indictment charging Defendant with violation of 41 U.S.C. §§ 53 and 54. On June 30, 2005, Defendant was arrested at his office in Costa Mesa, California and made his initial appearance in the United States District Court in the Central District of California. He was immediately released on a $20,000 signature bond after agreeing to appear in the District of Connecticut on or before August 8, 2005.

The charges in the indictment stem from an investigation conducted by the United States Department of Defense, Defense Criminal Investigative Service, into the theft of trade secrets from a Connecticut Defense Contractor, Stran Technologies. During the investigation, it was determined that a former Stran Technologies employee, Kevin Smith, had stolen product and

1

proprietary design drawings. Smith ultimately pled guilty to theft of trade secrets and entered into a cooperation agreement with the Government. Smith revealed that he stole the products and drawings to begin his own business, which he operated out of his Connecticut home. He also revealed that he had been solicited for kickbacks by Defendant, who was employed by QPC Fiber Optic, Inc., a California defense contractor that did business with Stran Technologies. Defendant allegedly offered to purchase products from Smith on behalf of QPC Fiber Optic in return for payments of 10% of each purchase order. As a result of this arrangement, Kiener received kickbacks from Smith, paid to "Contronix," an entity Defendant created that engaged in no activity other than the receipt of payments from Smith.

Defendant has been charged in a one-count Indictment, which alleges that he solicited and accepted kickbacks in violation of 41 U.S.C. §§ 53 and 54.

## II.   Discussion

Defendant moves to change venue in the case from the District of Connecticut to the Central District of California. Defendant also moves to dismiss the indictment. These motions are addressed in turn.

### A.   Motion to Change Venue

Defendant argues that the case should be transferred to the Central District of California because he cannot obtain a fair and impartial trial in the District of Connecticut and because it would be in the interest of justice to do so.

Rule 21(b) of the Federal Rules of Criminal Procedure provides in relevant part that the Court may transfer a case "to another district for the convenience of the parties and witnesses and in the interest of justice." The Court may also consider:

> (a) the location of the defendants; (b) location of possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential disruption for the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (I) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964). Defendant bears the burden of justifying a transfer under Rule 21(b).

Defendant points to United States v. Layne, 2005 U.S. Dist. LEXIS 7567 (S.D.N.Y. May 2, 2005) for the proposition that "courts in this district have afforded greater weight to the defendant's interest in being tried in the district of his residence than to any other factor." The Government correctly indicates, however, that neither the United States Supreme Court of the United States Court of Appeals for the Second Circuit have specifically endorsed giving greater weight to defendant's location. In fact, the United States Court of Appeals has explained that the most important factors to consider are "(a) inconvenience and expense to the parties and (b) the location of parties, witnesses, counsel, events in issue, and necessary documents and records." United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990). The Court will balance these factors, as discussed below.

**(i)     The location of the Defendant**

The Government concedes that Defendant resides in California, but argues that the Court's consideration of the remaining Platt factors favors on balance trial in the District of Connecticut. This factor favors jurisdiction in California.

**(ii)    Location of Possible Witnesses**

Defendant argues that the location of witnesses favors venue in California, as his primary

witnesses reside in California and any character witnesses will also likely reside in California as well.  The Government counters that its primary witness, who paid the alleged kickbacks to Defendant, resides in Connecticut and that other witnesses currently expected to testify are based in Connecticut, California, and Ohio.  The Court concludes that this factor is fairly balanced.

**(iii.)    Location of Events Likely to be at Issue**

Defendant concedes that the events at issue took place in Connecticut, but argues that the amount of the alleged kickback–$377.89–is substantially outweighed by the costs he will incur in defending the action in Connecticut.  The expenses incurred by the parties if the transfer is denied is a separate factor that the Court must consider and is therefore not persuasive for purposes of considering the location of the events at issue.  Because the events at issue occurred in Connecticut, this factor tips in favor of jurisdiction remaining in Connecticut.

**(iv)    Location of Relevant Documents and Records**

Defendant also argues that the location of documents and records favors trial in California, as the documents and records at issue are likely to be communications over the internet, including emails.  The Government counters that this factor is not persuasive for either forum as the record is not voluminous.  The Court finds that this factor is fairly balanced, as the minimal number of documents and records are readily available in both Connecticut and California.

**(v.)    Potential Disruption of Defendant's Business if Transfer is Denied**

Defendant argues that no matter where the trial is held, a substantial amount of time would be occupied, but that the amount of time would be lessened if trial occurred in near his home.  He argues that trial in Connecticut will necessarily disrupt his business.  Although likely

that Defendant's business will be disrupted by maintaining venue in Connecticut, the case is scheduled for jury selection and any potential disruption will likely be limited solely to the time for trying the case, which should be minimal.  The Court finds that this factor tips slightly in favor of transfer.

**(vi.)   Expenses to be Incurred by the Parties if the Transfer is Denied**

Defendant argues that the expense to him for traveling to Connecticut for trial would be far more burdensome on him than it would be for the United States Attorney's Office to have another Assistant United States Attorney in that district handle the case.  Defendant also contends that he would practically be forced to plead guilty to avoid the expense of defending the charges, especially in light of the small amount of money involved with this kickback.  The government counters that the time and expense of requiring a new prosecutor and case agent in California to prepare for trial would far exceed Defendant's travel costs.  The government also indicates that Defendant was able to schedule business on the East coast to coincide with his initial appearance and may be able to do so in the future, thereby ameliorating the costs of defending himself in Connecticut.

The Court concludes that this factor tips in favor of maintaining venue in Connecticut, as the cost of transferring the case would likely result in a greater burden on the United States Attorney's Office than it would on Defendant to appear in Connecticut for trial.

**(vii.)   Location of Defense Counsel**

Defendant's lead counsel is located California, but Defendant has also retained local counsel in Connecticut.  Defendant argues that he could more effectively participate in his defense if counsel was located in his home district.  The Court is not persuaded that the

5

effectiveness of Defendant's participation would be diminished as a result of his geographic location. Defendant's lead counsel is located in California and Defendant will have a full opportunity to participate in the trial in Connecticut. The Court finds that this factor is fairly balanced.

**(viii.)  Relative Accessability of the Place of Trial**

California is relatively more accessible than Connecticut, but modern transportation will not render Defendant's travel to Connecticut for trial inaccessible. This factor therefore tips only slightly in favor of transfer.

**(ix.)  Docket conditions of each potential district**

This case is scheduled for jury selection and trial should follow immediately thereafter. Therefore, even if the docket conditions in California permitted the speedy trial of this case, it would not be beneficial to transfer the case.

**(x.)  Any other special circumstance that might bear on the desirability of transfer.**

Neither Defendant nor the government have proffered special circumstances beyond those already discussed.

**(xi.)  Summary**

On balance, the Court concludes that the factors discussed above weigh against transferring the case to the District of California. Although Defendant will be forced to travel to Connecticut for trial, and his business will likely be interrupted, the extent of any interruption is likely comparable to that which would Defendant would incur for trial in California. Furthermore, modern technology offers myriad opportunities for Defendant to maintain contact with his California operation. The conduct surrounding the indictment occurred in Connecticut,

and the witnesses in the case are likely to include Connecticut residents.  Furthermore, the case is ready to proceed to jury selection and trial and transferring the case to California would hinder the resolution of this case.  Accordingly, Defendant's Motion to Change Venue is denied.

**B.     Motion to Dismiss the Indictment**

Defendant moves to dismiss the indictment [Doc. No. 21] on the grounds that the government was not financially harmed as a result of his conduct and that he did not make the ultimate decision to purchase from Smith's company.  More specifically, Defendant contends that the conduct in this case occurred after the government had contracted with QPC and that the price to the Government was set before Defendant began dealing with Smith.  Furthermore, Defendant argues that because the price Smith charged QPC was equal to the price that Stran had charged, the government never incurred additional costs as a result of his arrangement with Smith.

The Anti-Kickback Act, 41 U.S.C. § 53 (2006) provides that it is unlawful "to solicit, accept, or attempt to accept any kickback."  Under the statute,

> The term kickback means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime contractor, prime contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a subcontract relating to a prime contract.

41 U.S.C. § 52(2) (2006).

Defendant relies upon United States v. Zacher, 586 F.2d 912 (2d Cir. 1978) for the proposition that the government must be financially harmed through increased costs or receipt of inferior goods.  Zacher, however, does not inform the Court in this case because the court there addressed a provision of the Social Security Act that prohibited soliciting or receiving any

kickback or bribe. As the government correctly indicates, the definition of "kickback" was not at issue in that case because the government conceded that no kickback was involved. Furthermore, even if the court in Zacher had defined a "kickback" for purposes of the Social Security Act, such a finding would not be controlling in this case, as the Anti-Kickback Act expressly defines a "kickback."

Defendant's reliance on United States v. Acme Process. Equip. Co., 385 U.S. 138 (1966) is also unpersuasive. In Acme, three employees had accepted payments from a subcontractor in exchange for being awarded the subcontract. Acme, the prime contractor, eventually increased the price to the government based upon increases demanded by the subcontractor, which were necessary to pay for Acme's employees' kickbacks. The Court concluded that, although not expressly contemplated, the Anti-Kickback Act, among other remedies, permits the government to cancel a contract when its employees enter into a kickback agreement with a subcontractor.

The Court in Acme discussed the economic harm often associated with kickbacks, but did not conclude that economic harm by way of an increase in the contract price to the government was necessary. In fact, the Second Circuit has explained that economic harm through "inflated pricing is not [the] only effect [of kickbacks]." United States v. Purdy, 144 F.3d 241, 244 (2d Cir. 1998). Rather, in addition to corrupting the Federal procurement system, "[i]t drives out honest competitors and destroys the markets in which the government must bargain." Id. (Internal quotation marks omitted.)

The Court is also not persuaded by Defendant's argument that "[t]here is no clearer case [than Acme] for determining what "kickbacks" are." The statutory language makes no mention of economic harm to the government, and the statutory elements are otherwise satisfied in this

case.  A kickback means compensation of any kind which is provided to any . . . prime contractor employee (Defendant) . . . for the purpose of improperly obtaining or rewarding favorable treatment in connection with a subcontract relating to a prime contract.  Because the statutory elements are satisfied in this case, the Court will not dismiss the indictment.

### III.  Conclusion

For the reasons discussed above, Defendant's Motion to Change Venue and Motion to Dismiss the Indictment are denied.

SO ORDERED.

Dated at New Haven, Connecticut this  26th  day of April, 2006.

/s/
Peter C. Dorsey
United States District Judge
