UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

V.                                : No. 3:05CR00142 (PCD)

EDWARD KIENER                     :

RULING ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Pursuant to rule 29, F.R.Crim.P., defendant moves for judgment of acquittal. Defendant stands convicted by a jury verdict of a violation of 43 U.S.C. § 53, the indictment charging his soliciting, accepting or attempting to solicit or accept a kickback. He moves, after the court reserved a decision on the initial motions during trial, on the basis that the evidence was not sufficient to permit a jury to find that the charge was proven beyond a reasonable doubt. He concedes he must convince the court that the government failed to meet its burden of proof as to the elements of the offense. Smith v. Massachusetts, 543 U.S. 462 (2005).

FACTS:

Defendant was employed, in 2001, as Director of Sales of QPC Fiber Optic. In part, he found and arranged for price quotes and purchases from suppliers of parts required by QPC. One supplier was Stran technologies which employed Kevin Smith as Operations and Quality Control Manager. Smith knew Stran's prices for parts sold to QPC and had access to drawings for those parts, as well as to the parts themselves. Smith and defendant communicated regularly in the course of business between their respective employers. In January, 2001, in confidence, Smith informed defendant he was forming his company, Optical Fiber Connections (OFC), though he continued in Stran's employ. In March 2001, Smith received an order, placed by defendant, for parts which Smith caused to be supplied by OFC to QPC with parts Smith stole from Stran.

Shortly thereafter, defendant called Smith at home and advised Smith that he, defendant, was forming his own company, Contronix, which he proposed to act as a sales representative for Smith, for which he proposed that Smith pay a 10% commission. Smith agreed. By being enabled to sell parts to QPC, defendant's employer, Smith hoped his firm would prosper though he did not think it was the right thing to do.  He confirmed the agreement by e-mail. Ex. 3. In response, defendant noted that the arrangement was to be confidential. On QPC projects he would purchase from OFC whenever possible but his name was not to appear on invoices sent to QPC. Trial transcript (TT) 28.  Approximately a dozen orders were thus placed and filled, on each of which defendant was paid 10% by Smith. The arrangement continued until Smith's employer learned of his business. Except for his approach to Smith, defendant was not known to have undertaken any sales effort on OFC's behalf. TT 76. Defendant's only transactions were those he arranged with Smith. Contronix' bank account showed no deposit other than Smith's payments. Defendant was concerned that QPC would learn what he was doing, TT 41, but it learned of defendant's activity much later. Without knowing it, QPC paid defendant as a sales representative and an employee.

Defendant testified that he informed Smith that his company was a tier one vendor, which classification did not exist at QPC. Defendant knew that by ordering through Smith's company, Stran's prices were undercut. Per Ex. 9B, connectors were purchased from OFC for which QPC paid $82.15 for each connector, of which 10%, $8.21 went to defendant. If QPC had paid the price without defendant's 10%, it would have saved the $8.21 paid to defendant.

DISCUSSION:

Defendant points to the statutory definition of a kickback to include things of value for "the purpose of improperly obtaining...favorable treatment in connection with a" contract, citing 41 U.S.C. § 52(2). He then focuses on a need for the purpose to be improper and to be favorable

as defined by Webster. He would characterize the channeling of business to Smith's company as "normal business" ignoring the fact that Smith was using pricing information known from his employer and was competing with his employer. That Smith was acting for himself while being paid to act for his employer, cannot be seen in a positive, favorable light. Getting paid while at the same time acting to the disadvantage of the payor has no semblance to normal business. So also for defendant whose conduct caused his employer to pay more for its purchases than might otherwise have been arranged, i.e. in a freely competitive scenario, and to pay an increased price that in part went to defendant who was already being paid by his employer, would hardly be seen as normal business. That the two dealt clandestinely, both insisting the arrangement be hidden from the respective employers, makes it inappropriately regarded as normal business. Both regarded it as other than normal business. See United States v. Perry, 431 F.2d 1020, 1022 (9th Cir. 1970). The evidence, regarded most favorably as supportive of the conviction, would clearly suggest the impropriety of the payment made to defendant under the circumstance and would most certainly be within the reasonable determination of the jury that the case had been proven against defendant beyond a reasonable doubt.

     Smith certainly made the payment to defendant to obtain favorable treatment by profiting from the sale. Defendant obtained favorable treatment by being paid a portion of the purchase price charged to and paid by his employer. Characterizing defendant's payment as a commission not only is a misnomer, it does not alter the fact that it was made and received in contravention of the respective responsibilities of Smith and defendant to their employers. It starkly contrasts with Smith's arrangement with Datamark as an independent sales representative. Commissions have an underlying quality of compensating for contributing to a transaction, a quality totally lacking in defendant's conduct. He did nothing to bring about the sale except to use his position,

for which he was otherwise being paid by QPC. His only effort was to put out his hand to receive the 10%, thus hardly earning a commission.  That witnesses viewed the conduct of Smith and defendant less harshly than might the jury, does not alter the propriety of the jury finding the arrangement and defendant' receipt of the 10% as improper.

Accordingly, defendant's motion for acquittal is denied as without merit.

SO ORDERED:

Dated at New Haven, Connecticut this 27th day of September, 2006.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE